ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM. *
This attorney disciplinary proceeding arises from the filing of formal charges by the Office of Disciplinary Counsel (“ODC”) against respondent, Blake G. Williams, an attorney licensed to practice law in the State of Louisiana. The charges allege violations of Rules 1.4 (failure to comply with reasonable requests for information); 1.15 (failure to keep client property separate from attorney’s own property); 8.4(a) (violating the Rules of Professional Conduct); 8.4(e) (engaging in conduct involving fraud, deceit, dishonesty or misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
UNDERLYING FACTS
The record indicates respondent was retained by Mona Lisa Hebert, on behalf of her minor daughter, Rondricka Hunter, in connection with a dispute concerning life insurance proceeds that were due to Rondricka arising from the death of her father. Respondent was ultimately successful, and in December of 1990, he obtained $49,561.32 in life insurance proceeds for Ms. Hebert, on *700 behalf of Rondricka. Ms. Hebert and respondent opened two accounts at Hibernia National Bank with the proceeds: (1) a regular checking account opened with $21,561.32 for the minor’s general welfare,[1] and (2) a “Tower” savings account opened with the remaining $28,000.00, to be kept intact pending Rondricka’s eighteenth birthday. Both checkbooks were entrusted to respondent for safekeeping; however, the accounts were in the names of Rondricka and her mother, in her capacity as tutrix.
Ms. Hebert asserted that respondent never received authorization from her to frmvest the funds for his or her use. Nonetheless, the bank records reflect that during the period from December 1990 to May 1991, respondent withdrew nearly all the money in the Tower account without permission from or notification to his client. In fact, Ms. Hebert had no knowledge of respondent’s actions until 1994, when she learned from a bank teller that there was less than $500.00 in the Tower account. She tried to call respondent, but his office personnel told her he had moved and that they did not know where to find him.[2]
DISCIPLINARY PROCEEDINGS
Ms. Hebert subsequently filed a complaint with the ODC against respondent. In response to the ODC’s investigation, respondent admitted he helped complainant open the two Hibernia accounts, but contended he had permission to invest the proceeds.[3]
After the filing of formal charges, respondent filed an answer in which he stated that most of his files from 1990 were lost or damaged by water; thus, he would answer to the best of his recollection. He again admitted helping complainant open the two accounts, taking 25% out of the cheeking account for his contingency fee, and “[t]here were several others [sic] transactions for investment purposes one for ten thousand, eight thousand, four thousand, and maybe two to three other transactions at smaller amounts.” Additionally, respondent explained that the monies were invested by sponsoring several concerts across Louisiana, including one in Thibodaux, Louisiana, and noted there was a pending law suit against the Thibodaux Civic Center for “breach of contract” in connection with that concert.
Respondent failed to appear at the formal hearing, but the ODC presented the testimony of Ms. Hebert and James Kitto, vice-president of Hibernia National Bank. At the ^conclusion of the hearing, the hearing committee filed its report with the disciplinary board.
The committee made a finding of fact that respondent converted to his own personal use, without the approval or authorization of complainant, $27,500 which was the property of the complainant’s minor child, Rondricka Hunter. The committee found the baseline sanction for this conduct was disbarment. While it failed to recognize any mitigating factors, the committee recognized several aggravating factors: (1) prior discipline;[4] (2) *701 dishonest or selfish motive; (3) refusal to acknowledge wrongful nature of conduct; (4) vulnerability of victims; (5) indifference to making restitution; and (5) illegal conduct. Based on its findings, the hearing committee recommended disbarment as the appropriate sanction.
Thereafter, the disciplinary board filed its recommendation with this court, in which it concurred in the findings and recommendation of the committee. Relying on Standard 4.11 of the ABA Standards for Imposing Lawyer Sanctions,[5] as well as this court’s opinion in Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986),[6] the board concluded disbarment was the appropriate sanction for respondent’s misconduct.[7] It further recommended respondent be ordered to pay restitution and be assessed with all costs of the proceedings.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
^CONCLUSION
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and the record filed herein, it is the decision of the court that the recommendation of the disciplinary board be adopted.
DECREE
Accordingly, it is ordered that the name of Blake G. Williams be stricken from the roll of attorneys and that his license to practice in the State of Louisiana be revoked. It is further ordered that the respondent make full restitution, plus legal interest, to his former clients. Costs of these proceedings, in the amount of $311.22, are assessed against respondent.

 Traylor, J. not on panel. Rule IV, Part 2, § 3.

. Respondent's $12,000 legal fee was taken out of this account.

. It appears from the record that Ms. Hehert later filed a civil action against respondent, seeking damages for tortious conversion of her daughter’s funds. Mona Lisa Hebert et al. v. Blake G. Williams, No. 94-11135, Civil District Court for the Parish of Orleans. Respondent failed to file an answer in this suit, and on December 14, 1994, the trial court rendered a default judgment in Ms. Hebert’s favor in the amount of $28,000 plus interest. The trial court's judgment stated that “this Judgment is rendered for the reasons that the defendant, Blake G. Williams, intentionally and deliberately converted the funds of Rondricka M. Hunter to his own use.”

. In a letter to the ODC dated April 2, 1996, respondent stated:
[T]his was done with the understanding that I would be place [sic] and acting as a trustee to Rondricka Hunter, because of my close relationship that I had with her father years before. Ms. Hebert was fully aware of my excess[sic] to the accounts. Because on several occasions she had received monies from me out of the accounts and it was also stated that if at any time I could enhance Rondricka’s money threw [sic] investments I could do so, as long as I would guarantee her money.

.On November 14, 1994, respondent was admonished in 94 — SDB-110 for violating Rules 8.1(c) and 8.4(g) of the Rules of Professional Conduct due to a failure to cooperate with the ODC in its investigation into a complaint involving the respondent. The record also indicates the respondent was rendered ineligible to practice for the failure to satisfy membership dues *701 requirements during the periods: 9/1/93— 10/07/93; 9/6/95 — 9/19/95; 10/01/96 — 12/04/96; and 9/02/97 — present (with certificate dated 9/23/97).

. Standard 4.11 of the ABA Standards for Imposing Lawyer Sanctions provides; "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.”

. In Hinrichs, this court outlined factors supporting disbarment in a conversion case:
In a typical case of disbarment ..., one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer fails to make full restitution or does so tardily after extended pressure or disciplinary or legal proceedings, [citations omitted].

.The board noted the only possible mitigating factor might be respondent’s inexperience in the practice of law, since he was admitted in April of 1990, shortly before the misconduct at issue. However, it determined this factor appeared to be "slight” given the respondent's misconduct was not attributable to the lack of legal experience, "but rather one indicative of dishonest character.”